UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:25-cv-23201-GAYLES

LUIS ALONSO ESPINOZA-SORTO,

    Petitioner/Plaintiff,

v.

JUAN AGUDELO, et al.,

    Respondents/Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner/Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order (the "Motion"). [ECF No. 4]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND

This case concerns Respondents' detention and pending removal of Petitioner Luis Alonso Espinoza-Sorto ("Petitioner"), a Honduran national and citizen.[1]

---

[1] In his Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief (the "Complaint"), [ECF No.1], Petitioner names the following Respondents/Defendants: Juan Agudelo, Interim Field Office Director of the Miami Field Office of the United States Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"); Todd M. Lyons, Acting Director of ICE; Kristi Noem, Secretary of DHS; Pamela J. Bondi, U.S. Attorney General; and U.S. Citizenship and Immigration Services (collectively the "Respondents").

In cases involving present physical confinement, "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). Petitioner is currently detained a the Krome Processing Center in Miami, Florida, and his immediate custodian is Charles Parra, Assistant Field Office Director. Mr. Parra is the proper Respondent for Petitioner's habeas claims. Petitioner also moved for leave to amend the Petition to add USCIS and Connie Nolan, Acting Associate Director of the USCIS Vermont Service Center. While the Petitioner already names USCIS as a Respondent, it appears he seeks to add Ms. Nolan because, under the APA,

1

**I.      Removal Order**

On December 11, 2011, Petitioner unlawfully entered the United States. On December 13, 2011, the Department of Homeland Security ("DHS") determined Petitioner was inadmissible and ordered him removed pursuant to 8 U.S.C. § 1225(b)(1) (the "Removal Order"). Petitioner unlawfully re-entered the United States sometime after January 2012 and was residing, undocumented, in Miami, Florida.

**II.     U-Visa Application and Deferred Action**

On October 13, 2018, Petitioner's five-month-old daughter and another child died in a fire after the children's mother left them unattended with access to matches. The mother was ultimately charged with aggravated manslaughter of a child.[2] In the course of their investigation into the fire, law enforcement became aware of Petitioner's undocumented status and notified Immigration and Custom Enforcement ("ICE"). On October 19, 2018, DHS reinstated his Removal Order, and on February 1, 2019, Petitioner was convicted of illegal reentry after removal and sentenced to time served and one year of supervised release.

On February 4, 2019, ICE detained Petitioner pursuant to his Removal Order. The same day, Petitioner applied for a U-1 nonimmigrant visa based on the manslaughter of his daughter and his cooperation with law enforcement in the investigation of that crime (the "U-Visa Application").[3] On February 22, 2019, U.S. Citizenship and Immigration Services ("USCIS")

---

any injunction entered against the United States must "specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." 5 U.S.C. § 702. For purposes of this Motion, the Court assumes that Petitioner named the proper respondents.

[2] Petitioner and the mother were the parents of the five-month-old. They were not cohabitating at the time of the fire.
[3] An alien is eligible for U-1 nonimmigrant status if he "suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity" and cooperated with law enforcement "in the investigation or prosecution" of that criminal activity. 8 C.F.R. § 214.14(b). "[T]he total number of aliens who may be issued a U-1 nonimmigrant visa or granted U-1 nonimmigrant status may not exceed 10,000 in any fiscal year." *Id.* at § 214.14(d)(1). As a result, USCIS has a waitlist for applicants who, "due solely to the cap, are not granted U-1 nonimmigrant status . . . [and] will grant deferred action or parole to U-1 petitioners . . . while [they] are on the waiting list." *Id.* at 214.14(d)(2).

granted Petitioner's request for an administrative stay of removal for one year. On February 26, 2019, Petitioner was released from ICE custody on an Order of Supervision ("OSUP").[4]

On June 14, 2019, USCIS notified Petitioner that, although he appeared to be eligible for U-1 nonimmigrant status,[5] the statutory cap for U-Visas had been reached for the fiscal year. As a result, USCIS placed Petitioner on the U-Visa waitlist and granted him "deferred action as permitted by regulation." [ECF No. 1-5 p. 2]. USCIS noted that "[d]eferred action is an act of administrative convenience to the government which gives some cases lower priority for removal." *Id.*

### III.   Current Detention and Federal Lawsuit

On June 17, 2025, ICE's Enforcement and Removal Operations ("ICE ERO") apprehended Petitioner pursuant to his Removal Order and detained him at the Krome Processing Center in Miami. In paperwork completed that day, the Deportation Officer noted that Petitioner has been an "associate/inactive of M.S. 13." [ECF No. 9-1]. On June 20, 2025, Petitioner filed an application for a stay of removal with USCIS.[6]

On July 17, 2025, Petitioner filed his Complaint challenging his detention as a violation of the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and the Due Process Clause of the Fifth Amendment. Petitioner alleges that Respondents wrongfully detained him and cannot remove him because of his OSUP and deferred action status. In his Motion, Petitioner argues that Respondents have not followed their own procedures in violation of

---

[4] Pursuant to 8 U.S.C. § 1231(a), when an alien has been ordered removed, the Attorney General must remove the alien within a period of 90 days known as the "removal period". However, if the alien "will not pose a danger to the community . . . or a significant risk of flight" then the alien may be released under an OSUP. 8 C.F.R. § 241.4(d)(1).
[5] In an Interoffice Memorandum, USCIS found Petitioner was "*prima facie* eligible" for a "U nonimmigrant classification" and that its determination was "valid until a final decision has been made on the petition or the *prima facie* has been revoked." [ECF No. 1-5 p. 3].
[6] USCIS denied Petitioner's request for a stay of removal on July 31, 2025.

the APA and Due Process Clause. Petitioner seeks a release from custody and stay of removal. The Court has stayed Petitioner's removal pending its adjudication of the Motion. *See* [ECF Nos. 5, 8, 10, 14, 15, 19].

## IV.   OSUP Revocation and Removal from Waitlist

On July 23, 2025, ICE notified Petitioner that it was revoking his OSUP based on changed circumstances, specifically Petitioner's association with the "Transnational Criminal Organization, MS-13 gang" (the "Notice of Revocation of Release").[7] [ECF No. 9-7]. Deportation Officer Karina Jurdi ("Officer Jurdi") served Petitioner with the Notice of Revocation of Release and conducted an informal interview of him where she explained that ICE detained him to effectuate his removal from the United States. [ECF No. 9-8].

In late July and early August 2025, ICE ERO asked USCIS to expedite its adjudication of Petitioner's U-Visa Application and remove Petitioner from the U-Visa waitlist based on Petitioner's alleged association with MS-13. In response, USCIS requested additional documentation from ICE ERO.

On August 13, 2025, Officer Jurdi conducted a post-custody interview of Petitioner. According to Petitioner, an ICE officer photographed his tattoos and accused him of being associated with MS-13, which Petitioner denied.

On September 15, 2025, USCIS issued Petitioner a Notice of Intent to Deny ("NOID") stating that it removed Petitioner's U-Visa Application from the U-Visa waitlist based on "evidence in the record" indicating that he "may be ineligible for U nonimmigrant status." [ECF No. 16-1].

---

[7] The government can revoke an OSUP for several reasons including when an alien violates his "conditions of release." 8 C.F.R. § 241.4(l)(1). An OSUP may also "be revoked in the exercise of discretion when, in the opinion of the revoking official: (i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id*. § 241.4(l)(2). Section 241.13(i) sets forth similar reasons for the revocation of an OSUP. The parties have not argued that Petitioner's OSUP was issued or revoked pursuant to § 241.13.

The NOID details the derogatory information USCIS will consider in deciding whether to deny Petitioner's U-Visa Application including his unlawful entries into the United States, the Removal Order, his conviction for illegally reentry,[8] and his alleged membership in MS-13. *Id.*[9] *Id*. USCIS gave Petitioner until October 18, 2025, to submit evidence to overcome the reasons for denial.

Since filing this action, Petitioner has filed two emergency motions seeking an expedited resolution of his Petition and asking the Court to compel Respondents to turn over the derogatory information USCIS references in the Notice of Revocation of Release and the NOID. *See* [ECF Nos. 13, 16]. The Court denied both motions. *See* [ECF Nos. 14, 20].

## LEGAL STANDARD

To obtain a preliminary injunction, the Petitioner must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "The third and fourth factors merge when a party seeks an injunction against the government." *HM Fla.-ORL, LLC v. Gov. of Fla.*, 137 F.4th 1207, 1224 (11th Cir. 2025).

"The issuance of a temporary restraining order or preliminary injunctive relief is an extraordinary remedy to be granted only under exceptional circumstances." *Day v. 21st Cent. Centennial Ins. Co.*, No. 8:14-CV-2048-T-36AEP, 2014 WL 12597030, at *1 (M.D. Fla. Sept. 22,

---

[8] The NOID lists February 1, 2018, as the date of Petitioner's conviction for Illegal Reentry. This appears to be a typographical error as the record reflects that Petitioner's conviction was on February 1, 2019.

[9] Based on these allegations, USCIS stated that Petitioner appeared to be inadmissible to the United States under the following provisions of the INA: § 212(a)(3)(B)(i)(V) (Member of a Foreign Terrorist Organization); § 212(a)(6)(A)(i) (Alien Present Without admission or Parole); § 212(a)(6)(E)(i) (Alien Smuggling); § 212(a)(9)(A)(i) (Alien Previously Removed, as an Arriving Alien); § 212(a)(9)(A)(ii) (Alien Previously Removed, Not as an Arriving Alien); § 212(a)(9)(B)(i)(II) (Non-LPR Unlawfully Present in U.S. One Year or More); § 212(a)(9)(C)(i)(I) (Unlawfully Present for One-Year Aggregate and Entered or Attempted to Enter Without Being Admitted); and § 212(a)(9)(C)(i)(II) (Previously Ordered Removed and Entered or Attempted to Enter Without Being Admitted). [ECF No. 16-1].

2014). "If a less drastic remedy . . . [i]s sufficient to redress [Petitioner's] injury, no recourse to the additional and extraordinary relief of an injunction [i]s warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo ex rel. Schindler*, 403 F.3d at 1226 (denying injunctive relief when movant did not establish first factor even if the other three factors were met).

## DISCUSSION

It is undisputed that Petitioner illegally entered the United States and is the subject of a removal order. The primary disputes are whether Respondents (1) wrongfully detained Petitioner despite his OSUP and deferred action status and (2) failed to follow their own regulations in revoking Petitioner's OSUP and evaluating his U-Visa Application.

**I.      Jurisdiction**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999). Accordingly, before the Court can proceed, it must determine whether it has jurisdiction over this action. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) ("Prior to making an adjudication on the merits, we must assure ourselves that we have jurisdiction to hear the case before us."). Respondents contend that 8 U.S.C. § 1252 strips the Court of jurisdiction to evaluate most of Petitioner's claims.

A. **INA Jurisdictional Limitations**

Several provisions of the INA restrict the Court's jurisdiction to adjudicate certain decisions made by the Attorney General regarding removal. Section 1252—titled "Judicial review of orders of removal"—provides in pertinent part:

> (a)(2)(B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .
>
> (g) Exclusive jurisdiction
>
> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General **to commence proceedings, adjudicate cases, or execute removal orders** against any alien under this chapter.

8 U.S.C. § 1252(a)(2)(B)(ii), (g) (emphasis added). The Supreme Court "narrow[ly] read[]" § 1252 and held that it does not encompass "all claims arising from deportation proceedings." *Reno v. Am-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999). Rather, it only blocks courts from having jurisdiction over claims arising from three "discrete actions"—"to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* at 482.

The Court finds that § 1252(g) deprives it of subject-matter jurisdiction over Respondents' decision to revoke Petitioner's OSUP and any decision Respondents might make to deny (or grant) Petitioner's U-Visa Application. As detailed above, § 1252 deprives the Court of jurisdiction to hear claims arising from the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders. ICE's decision to revoke Petitioner's OSUP, a necessary step to

7

execute his removal order, and USCIS's adjudication of Petitioner's U-Visa Application clearly fall under the purview of § 1252(g). In addition, because the Attorney General has the discretion to revoke an OSUP, remove a petitioner from the U-Visa waitlist, and terminate deferred action, § 1252(a)(2)(B)(ii) also bars review of those decisions.[10]

### B. Deferred Action Status

The Court, however, does have jurisdiction to review whether Respondents can legally detain and remove an alien with deferred action status. Although the caselaw is limited, courts have held that a grant of "deferred action" is an "affirmative immigration benefit" that effectively makes it unlawful for a removal order to be executed while the alien has deferred action status. *Ayala v. Bondi*, No. 2:25-cv-01063, 2025 WL 2084400, at *5 (W.D. Wash. July 24, 2025). Because Petitioner's claim "arise[s] from the Government's grant of deferred action rather than from execution of his removal order", § 1252(g) does not strip the Court of jurisdiction. *Id.* at 5. *See also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863-64 (6th Cir. 2022) (holding that, by virtue of the petitioner's deferred action status under DACA, her removal order was "unexecutable" and, therefore, outside of the scope of § 1252(g)).[11] Therefore, the Court has jurisdiction to address Petitioner's claim that Respondents unlawfully detained and seek to remove him despite his deferred action status.

### C. Adherence to Procedures

The Eleventh Circuit has consistently held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its own

---

[10] Pursuant to 8 C.F.R. § 241.4(l)(2), "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section." Section 214.14(d)(3) provides that "a petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS."

[11] *But see Gomez v. Scott*, No. C25-0522JLR-BAT, 2025 WL 1726465, at *5 (W.D. Wash. June 20, 2025) (holding that petitioner's challenge to the Government's "decision and action to detain him and execute his valid removal order despite his deferred action status" fell within the realm of § 1252(g).").

8

regulations and procedures. *Kurapati v. U.S. Bureau of Citizenship and Immig. Services*, 775 F.3d 1255, 1262 (11th Cir. 2014) (finding that § 1252(a)(2)(B)(ii) did not prevent the Court from assessing whether the Government followed its procedures when it revoked Plaintiff's visa petition); *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Agencies must respect their own procedural rules and regulations . . . [and] the courts retain the authority to check . . . for procedural compliance . . . ."). *See also Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV, 2025 WL 1284720, *8 (W.D.N.Y. May 2, 2025) (holding that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."). Accordingly, the Court has jurisdiction to address Petitioner's claim that Respondents failed to comply with their procedures to revoke Petitioner's OSUP and adjudicate his U-Visa Application.

D. **Length of Detention**

It is undisputed that the Court has jurisdiction to adjudicate "statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

II. **Likelihood of Success on the Merits of Petitioner's Remaining Claims**

A. **Deferred Action**

As detailed above, the government's grant of deferred action means that "no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *Ayala*, 2025 WL 2084400, at *7 (quoting *Reno*, 525 U.S. at 484). *See also Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n. 3 (9th Cir. 2001) ("Deferred action refers to an exercise of administrative discretion by the [immigration agency] under which [it] takes no action to proceed against an apparently deportable alien based on a prescribed set of facts generally related to humanitarian grounds.") (internal quotations omitted); *Georgia Latino Alliance for Human*

9

*Rights v. Governor of Georgia*, 691 F.3d 1250, 1258 n. 2 (11th Cir. 2012) ("Deferred action status . . . amounts to, in practical application, a reprieve for deportable aliens. No action (i.e. no deportation) will be taken . . . against an alien having deferred action status.") (quoting *Pasquini v. Morris*, 700 F.2d 658, 661 (11th Cir. 1983)). The Court finds that Petitioner has a likelihood of success on the merits of his claim that it is unlawful to remove him while he has deferred action status. Indeed, by granting Petitioner deferred action status, Respondents affirmed that they would take no action to remove him while that status was in effect. Therefore, Respondents shall not remove Petitioner unless and until his deferred action status is revoked.

However, the Court does not find that Petitioner should be released from custody at this time. As detailed above, Respondents contend that Petitioner was detained, and his OSUP revoked, based on his association with MS-13. This, combined with Petitioner's Removal Order, is a sufficient basis to detain Petitioner pending adjudication of his U-Visa Application. *See Demore v. Kim,* 538 U.S. 510, 523 (2003) ("[D]etention during deportation proceedings [remains] a constitutionally valid aspect of the deportation process.").[12]

### B. Procedure Claims

The Court finds that Petitioner has not shown a substantial likelihood of success on the merits of his claims that Respondents failed to follow their procedures in revoking his OSUP and adjudicating his U-Visa Application.[13]

#### 1. OSUP Revocation

Respondents revoked Petitioner's OSUP pursuant to 8 C.F.R. § 241.4(l). When an OSUP is revoked under § 241.4(l)(1), the alien is entitled to notice "of the reasons for revocation" and an

---

[12] Moreover, releasing Petitioner from detention via a preliminary injunction is not warranted when there are less drastic remedies available. *Monsanto Co.*, 561 U.S. at 165–66
[13] As detailed above, the Court does not have jurisdiction to consider the propriety of Petitioner's OSUP revocation. Therefore, the Court does not consider Petitioner's argument that he is not associated with the MS-13 gang.

informal interview where the alien may "respond to the reasons for revocation." *Id*. § 241.4(l)(1).[14] The record reflects that Petitioner was afforded notice of the revocation and an informal interview on July 23, 2025, and a post-custody interview on August 13, 2025. As Respondents have complied with their procedures to revoke an OSUP, Petitioner has not shown a likelihood of success on the merits as to this claim.

### 2. NOID and Adjudication of U-Visa Application

Petitioner also argues that Respondents have not followed their own procedures in adjudicating his U-Visa Application. In particular, Petitioner argues that Respondents fabricated his connection to MS-13 and have not provided him with the derogatory information they intend to rely on to deny his Application.[15]

Respondents' procedures require that a NOID set forth "the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond . . . ." 8 C.F.R. § 103.2(b)(8)(iv).

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or on behalf of the applicant or petitioner shall be included in the record of proceeding.

---

[14] In *Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025), the Court noted that because §214.4(l)(2) does not explicitly reference the notice and interview requirements, it did not appear that the petitioner was entitled to notice or an informal interview under that provision. Other courts in this and other districts have held otherwise. *See e.g. Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 2604573, at *6 (S.D. Fla. Sep. 9, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025). Here, it is not necessary for the Court to address this issue as Petitioner received notice and an informal interview.

[15] As the Court has already ruled, it does not have jurisdiction to compel Respondents to provide Petitioner with their evidence of the derogatory information referenced in the NOID. Indeed, that would run afoul of § 1252(g) which strips the Court of jurisdiction over the Attorney General's adjudication of cases. Should USCIS deny Petitioner's Application, he may file an appeal with the USCIS Administrative Appeals Office. *See* 8 C.F.R. § 214.14(c)(5)(ii).

*Id.* § 103.2(b)(16)(i). The agency's decision must "be based only on information contained in the record of the proceeding which is disclosed to the applicant or petitioner . . . ." *Id.* § 103.2(b)(16)(ii). The regulations do not "require USCIS to provide documentary evidence of the [derogatory] information, but only sufficient information to allow the petitioners to rebut the allegations." *Mangwiro v. Johnson*, 554 F. App'x 255, 261 (5th Cir 2014). *See also Diaz v. U.S. Citizenship & Immigration Servs.*, 499 F. App'x 853, 855 (11th Cir. 2012) ("The regulations only require that a petitioner be advised of the derogatory information that will be used to deny the petition and be given the opportunity to respond.").

Here, the NOID details the derogatory information on which USCIS intends to rely to adjudicate Petitioner's U-Visa Application, including his Removal Order, prior unlawful entries, criminal charges, and purported affiliation with MS-13. Moreover, Petitioner was given an opportunity to respond and rebut the claims with his own evidence. This is enough to comply with the regulations. *See Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009) (holding that § 103.2(b)(16)(i) "does not require USCIS to provide, in painstaking detail, the evidence of [the wrongdoing] it finds."). Accordingly, Petitioner has not shown a likelihood of success on the merits of this claim.

### C. *Zadvydas* Claim

In *Zadvydas*, the Supreme Court found that it is "presumptively reasonable" to detain an alien awaiting removal for up to six months. 533 U.S. at 701. "After the 6-month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing." *Id*. at 680. Petitioner argues that because Respondents cannot remove him while he has deferred action status, there is no significant likelihood of his removal in the reasonably

foreseeable future. While the Court agrees that Respondents cannot remove Petitioner while he has deferred action status, Respondents have stated their intention to deny Petitioner's U-Visa Application (eliminating his deferred action status) and remove him to his home country. Additionally, Petitioner has only been detained for four months. As a result, any *Zadvydas* claim is premature.

### III.  Remaining Factors

Based on the foregoing, the Court finds that Petitioner has not demonstrated a substantial likelihood of success on the merits on most of his claims. Therefore, for those claims, the Court need not consider the remaining factors for a preliminary injunction. *See Schiavo*, 403 F.3d at 1226.

With respect to Plaintiff's deferred action status claim, the Court finds that Petitioner has established the remaining factors for a preliminary injunction. Petitioner will experience irreparable harm if he is removed before his U-Visa Application is adjudicated. Indeed, by removing him, he will effectively lose all the benefits of the government-conferred deferred action status.

The remaining factors, balancing the equities and considering the public interest, merge when the Government is a party to the case. The Court finds that these factors weigh in favor of Petitioner. "A preliminary injunction would impose little to no prejudice on the Government, which has already issued deferred [action status]" to Petitioner. *Ayala*, 2025 WL 2084400, at *9. Moreover, "[t]he public interest . . . favors ensuring that the Government does not detain or deport individuals without a legal basis." *Id.* Therefore, the Court finds that a preliminary injunction prohibiting Respondents from removing Petitioner while he has deferred action status is warranted.

**CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner/Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order, [ECF No. 4], is granted in part and denied in part.

2. Respondents shall not remove Petitioner from the United States while he has deferred action status. The stay of removal shall expire 72 hours after any denial of Petitioner's U-Visa Application and revocation of his deferred action status.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of October 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE